**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| SUSAN LORENZI, | ) | |
| Plaintiff, | ) | |
| vs. | ) | 3:11-cv-00342-RCJ-WGC |
| PRUDENTIAL INSURANCE Co. OF AMERICA, | ) | **ORDER** |
| Defendant. | ) | |

This case arises out of an alleged underpayment of life insurance benefits. Pending before the Court are cross motions for summary judgment. For the reasons given herein, the Court grants the motions in part and denies them in part, as explained herein.

## I.   FACTS AND PROCEDURAL HISTORY

Plaintiff Susan Lorenzi is a Nevada citizen and an employee of non-party Microsoft, Inc. (*See* Compl. ¶¶ 3–4, 7, Apr. 18, 2011, ECF No. 1-2). In March 2009, Microsoft offered Plaintiff group life insurance with Defendant Prudential Insurance Company of America ("Prudential") under policy number G-43994 (the "Policy"). (*Id.* ¶¶ 5, 8). The Policy is between Prudential and Microsoft, with Plaintiff as a third-party beneficiary. (*Id.* 5:5–6). The Policy does not provide for employer contributions, and Microsoft has never made any contributions to the Policy's premiums, thereby exempting the Policy from ERISA coverage pursuant to 29 U.S.C.

§ 1321(a)(5). (*Id.* ¶¶ 6, 21).  Under the Policy, Plaintiff could elect to insure the life of her husband Rodney A. Lorenzi for 20% to 50% of the amount her own life was insured; in Plaintiff's case, this was between $89,000 and $223,000. (*See id.* ¶ 9).  Plaintiff chose to insure her husband's life for the maximum possible amount of $223,000 ("full coverage"), with Plaintiff as the beneficiary. (*Id.* ¶¶ 9, 13).  However, Microsoft only deducted premiums from Plaintiff's paychecks as if she had chosen to insure Mr. Lorenzi for $89,000 ("partial coverage"), and Prudential therefore only insured his life for that amount. (*See id.* ¶¶ 9–11).

Shortly after entering into the Policy, Plaintiff received an email message from Defendant concerning an "Evidence of Insurability" ("EOI") form, but she ignored the email because it was marked as "low priority" by her email program. (*See id.* ¶ 12).  Mr. Lorenzi died unexpectedly on May 1, 2009. (*Id.* ¶ 14).  On May 6, 2009, Plaintiff received another email from Prudential, apparently not yet aware of Mr. Lorenzi's death, indicating that Prudential needed more information about Mr. Lorenzi before it would extend full coverage. (*See id.* ¶ 15).[1]  Plaintiff initially ignored this email, as well, because it was marked as "low priority" by her email program, but she eventually reviewed it on June 1, 2009. (*See id.* ¶¶ 16, 18).  The second email contained Defendant's request that she complete an EOI form for her husband. (*Id.* ¶ 18).  Possibly after receiving the email ("at about the same time"), Plaintiff submitted her husband's death certificate to Defendant. (*See id.* ¶ 17).  Plaintiff filled out the EOI and returned it by fax on June 4, 2009, signing it as "surviving spouse." (*Id.* ¶ 19).  Beginning in May (2009? 2010?), Microsoft began deducting full coverage premiums from Plaintiff's paychecks, retroactive to the date Plaintiff entered into the Policy, and continued to deduct full premiums until June 30, 2010.

---

[1] It can be fairly inferred that the first email was of the same nature and that Prudential had automatically caused Microsoft to deduct premiums from Plaintiff's paychecks only for partial coverage because it had not yet agreed to extend full coverage and would not do so until it received an EOI form on Mr. Lorenzi from Plaintiff.

(*See id.* ¶ 20).[2]  Defendant accepted these premium payments. (*Id.* ¶ 22).

On July 17, 2009, Defendant informed Plaintiff that it had denied her claim in part. (*Id.* ¶ 30). Defendant paid Plaintiff only $89,000, explaining that an EOI form had to be completed before an insured died in order for Defendant to extend full coverage. (*Id.* ¶ 31). Plaintiff notes that the second email indicated the EOI form for her husband was not due until June 6, 2009, but this was likely based on Defendant's assumption that the insured was still alive, as Plaintiff notes that she may have sent Defendant her husband's death certificate after she received the second email. (*See id.* ¶¶ 15–18, 31). Plaintiff demanded that Defendant pay the difference between partial and full coverage ($134,000), but Defendant refused and denied her two appeals. (*See id.* ¶¶ 32–33).

Plaintiff sued Defendant in state court on four causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) negligence; and (4) negligent misrepresentation. Defendant removed based upon complete preemption under ERISA and moved for summary judgment based upon ERISA preemption. The Court ruled that the Policy was not an ERISA plan, but that Defendants had also removed based upon diversity. The Court noted that it would await cross motions for summary judgment on the state law claims. The parties have now filed those motions. Plaintiff asks for a judgment of $134,000 plus interest, etc., and Defendant requests that the Plaintiff take nothing. The Court rules that Plaintiff is entitled to $11,000 (the difference between the maximum amount of partial coverage available without an EOI approval, minus the amount already paid) and a return of the excess premiums she paid.

///

---

[2]Plaintiff does not indicate whether the entire difference between partial and full coverage premiums for previous months were deducted in a lump sum or spread out over several months.

## II. LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.  ANALYSIS**

    **A.  Plaintiff's Motion for Summary Judgment**

Plaintiff argues that Defendant retroactively accepted her application for full coverage of her deceased spouse on June 6, 2009, because it approved her application for full coverage on that date with knowledge that her spouse was already deceased. The parties have manually filed the joint administrative record ("JAR").

Plaintiff argues that in March 2009, Microsoft held open enrollment for life insurance, and she elected full coverage for her spouse. She cites to page D188 of the JAR, but the JAR, which Defendant manually submitted, includes only pages D1–D185 and D192–D303, and Plaintiff does not separately adduce page D188 for the Court's consideration. Nor is page D188 included in the evidence adduced by the parties relating to the previous summary judgment motion. Plaintiff also points to a copy of her June 30, 2009 pay stub as proof that Microsoft had begun deducting premiums for full coverage at that time. The pay stub indicates a deduction of

1  $8.99 for "dependent life insurance," and Plaintiff notes that the previous payments had been for
2  $6.24, indicating that the difference was due to an increase in coverage for her husband. (*See* Pay
3  Stub, June 30, 2009, JAR, at D182).  Plaintiff's husband died on May 1, 2009. (*See* Certificate of
4  Death, May 18, 2009, JAR, at D59).  Plaintiff claimed death benefits of $223,000 for her
5  husband's death on May 4, 2009, based upon coverage in that amount with an alleged effective
6  date of March 1, 2009. (*See* Claim Form, May 4, 2009, JAR, D54–D56).  Under the question
7  "Was evidence of insurability required to secure current coverage?," Plaintiff checked neither
8  the "yes" nor "no" box, but wrote in the margin, "Yes but forms are not yet due." (*See id.* at
9  D55).  Plaintiff argues that prior to her husband's death, she had received two emails asking her
10 to fill out a form to provide evidence of insurability to secure full coverage for her husband.
11 Page D4 is the relevant portion of Plaintiff's Verified Complaint indicating that Plaintiff had
12 received two such emails, but not indicating the dates, and page D39 is a copy of an email
13 exchange listing the dates of the emails as March 25 and May 5.  The May 5th email indicated
14 that Plaintiff had until June 6 to send the EOI form, and Plaintiff sent the EOI form on June 5.
15 An internal Prudential email indicates that the EOI "short form" was received on June 4, 2009
16 after Plaintiff's husband's death, and that the EOI was processed and approved for $223,000.
17 (*See* Email, June 23, 2009, JAR, at D82).  The EOI itself is dated June 1, 2009 and signed by
18 Plaintiff as "surviving spouse." (*See* EOI, June 1, 2009, JAR, at D179).  On June 6, 2009,
19 Defendant sent Plaintiff a letter indicating that it had received the EOI for her spouse and that it
20 had approved it, but that her spouse would not necessarily be eligible for full coverage, or any
21 coverage at all, if Plaintiff's *own* EOI were not approved. (*See* Letter, June 6, 2009, JAR, at
22 D180).  In other words, Defendant by this letter appears to have admitted that full coverage for
23 Plaintiff's spouse could no longer be denied based upon an argument that Plaintiff had not
24 adduced an EOI form for him.  But Defendant appears to have preserved the argument that
25 Plaintiff herself needed to submit an EOI *for herself* to ensure full coverage for either herself *or*

1  her spouse.

2  It is not clear whether the Policy contemplates retroactive full coverage of a beneficiary
3  where Defendant receives a satisfactory EOI only after the insured dies, but the internal June 23
4  email indicates that Defendant knew of Plaintiff's spouse's death on June 4, approved full
5  coverage, and issued the letter on June 6 indicating that Plaintiff's spouse was eligible for full
6  coverage.  The language of the Policy requiring an EOI to be received before coverage can be
7  extended beyond $100,000, which language Defendant quotes in its letter, does not address
8  whether such coverage can never be retroactive after an insured's death.

9  In summary, Plaintiff had enrolled her husband for full coverage two months before he
10  died, and Defendant accepted premium payments for full coverage even after it knew he had
11  died, but it is not clear if Plaintiff's husband was in fact eligible for full coverage before he died
12  because he never filled out an EOI himself.  The language of the policy limits spousal coverage
13  to $100,000 before an EOI is approved, and it is undisputed that Plaintiff never returned the EOI
14  before her husband died and that her husband himself never verified his own medical history on
15  the EOI.  The Court is not convinced that Defendant knowingly waived the requirement for an
16  EOI properly filled out by Plaintiff's husband simply becuase an employee may have overlooked
17  that Plaintiff signed it herself as "surviving spouse."  Plaintiff is entitled to the difference
18  between $100,000 and $89,000 and to a return of the excess premiums she paid for full coverage.

19  **B.     Defendant's Motion for Summary Judgment**

20  This is a contract action, not a negligence action.  There is no hybrid cause of action for
21  "negligent performance of a contract" resulting in purely economic harm.  The economic loss
22  doctrine maintains the line between contract and tort by preventing recovery of contractual
23  damages based upon a tort theory.  Tort liability under a negligence theory is not available where
24  a contract governs the relationship between the parties and there is no personal injury or property
25  damage.  *See Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 87 (Nev.

2009) ("The economic loss doctrine draws a legal line between contract and tort liability that forbids tort compensation for certain types of foreseeable, negligently caused, financial injury. The doctrine expresses the policy that the need for useful commercial economic activity and the desire to make injured plaintiffs whole is best balanced by allowing tort recovery only to those plaintiffs who have suffered personal injury or property damage." (citation and internal quotation marks omitted)).  Defendant is therefore entitled to summary judgment on the negligence and negligent misrepresentation claims.  The contract-based claims provide appropriate measures of relief in the present action.

## CONCLUSION

IT IS HEREBY ORDERED that the Motions for Summary Judgment (ECF Nos. 31, 32) are GRANTED in part and DENIED in part.  The Court grants summary judgment to Plaintiff in part and to Defendant in part as to the breach of contract claim.  Under this claim, Plaintiff is entitled to $11,000, as well as a return of the additional premiums she paid for full coverage.  The Court grants summary judgment to Defendant as to the negligence and negligent misrepresentation claims.  Plaintiff's counsel shall prepare and submit a form of judgment subject to objections.

IT IS SO ORDERED.

Dated this 30th day of July, 2012.

_____
ROBERT C. JONES
United States District Judge