UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |
|---|---|
| SUSAN LORENZI,                                )<br>                                                            )<br>            Plaintiff,                                 )<br>                                                            )<br>     vs.                                                  )<br>                                                            )<br>PRUDENTIAL INSURANCE Co. OF         )<br>AMERICA,                                           )<br>                                                            )<br>            Defendant.                            )<br>                                                            ) | 3:11-cv-00342-RCJ-WGC<br><br>**ORDER** |

This case arises out of an alleged underpayment of life insurance benefits. Pending before the Court is Plaintiff's Motion for Attorney's Fees (ECF No. 56). For the reasons given herein, the Court grants the motion in part.

## I.   FACTS AND PROCEDURAL HISTORY

Plaintiff Susan Lorenzi is a Nevada citizen and an employee of non-party Microsoft, Inc. (*See* Compl. ¶¶ 3–4, 7, Apr. 18, 2011, ECF No. 1-2). In March 2009, Microsoft offered Plaintiff group life insurance with Defendant Prudential Insurance Company of America ("Prudential") under policy number G-43994 (the "Policy"). (*Id.* ¶¶ 5, 8). The Policy is between Prudential and Microsoft, with Plaintiff as a third-party beneficiary. (*Id.* 5:5–6). The Policy does not provide for employer contributions, and Microsoft has never made any contributions to the Policy's premiums, thereby exempting the Policy from ERISA coverage pursuant to 29 U.S.C.

§ 1321(a)(5). (*Id.* ¶¶ 6, 21). Under the Policy, Plaintiff could elect to insure the life of her husband Rodney A. Lorenzi for 20% to 50% of the amount her own life was insured; in Plaintiff's case, this was between $89,000 and $223,000. (*See id.* ¶ 9). Plaintiff chose to insure her husband's life for the maximum possible amount of $223,000 ("full coverage"), with Plaintiff as the beneficiary. (*Id.* ¶¶ 9, 13). However, Microsoft only deducted premiums from Plaintiff's paychecks as if she had chosen to insure Mr. Lorenzi for $89,000 ("partial coverage"), and Prudential therefore only insured his life for that amount. (*See id.* ¶¶ 9–11).

Shortly after entering into the Policy, Plaintiff received an email message from Defendant concerning an "Evidence of Insurability" ("EOI") form, but she ignored the email because it was marked as "low priority" by her email program. (*See id.* ¶ 12). Mr. Lorenzi died unexpectedly on May 1, 2009. (*Id.* ¶ 14). On May 6, 2009, Plaintiff received another email from Prudential, apparently not yet aware of Mr. Lorenzi's death, indicating that Prudential needed more information about Mr. Lorenzi before it would extend full coverage. (*See id.* ¶ 15).[1] Plaintiff initially ignored this email, as well, because it was marked as "low priority" by her email program, but she eventually reviewed it on June 1, 2009. (*See id.* ¶¶ 16, 18). The second email contained Defendant's request that she complete an EOI form for her husband. (*Id.* ¶ 18). Possibly after receiving the email ("at about the same time"), Plaintiff submitted her husband's death certificate to Defendant. (*See id.* ¶ 17). Plaintiff filled out the EOI and returned it by fax on June 4, 2009, signing it as "surviving spouse." (*Id.* ¶ 19). Beginning in May (2009? 2010?), Microsoft began deducting full coverage premiums from Plaintiff's paychecks, retroactive to the date Plaintiff entered into the Policy, and continued to deduct full premiums until June 30, 2010.

---

[1]It can be fairly inferred that the first email was of the same nature and that Prudential had automatically caused Microsoft to deduct premiums from Plaintiff's paychecks only for partial coverage because it had not yet agreed to extend full coverage and would not do so until it received an EOI form on Mr. Lorenzi from Plaintiff.

(*See id.* ¶ 20).[2]  Defendant accepted these premium payments. (*Id.* ¶ 22).

On July 17, 2009, Defendant informed Plaintiff that it had denied her claim in part. (*Id.* ¶ 30). Defendant paid Plaintiff only $89,000, explaining that an EOI form had to be completed before an insured died in order for Defendant to extend full coverage. (*Id.* ¶ 31). Plaintiff notes that the second email indicated the EOI form for her husband was not due until June 6, 2009, but this was likely based on Defendant's assumption that the insured was still alive, as Plaintiff notes that she may have sent Defendant her husband's death certificate after she received the second email. (*See id.* ¶¶ 15–18, 31). Plaintiff demanded that Defendant pay the difference between partial and full coverage ($134,000), but Defendant refused and denied her two appeals. (*See id.* ¶¶ 32–33).

Plaintiff sued Defendant in state court on four causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) negligence; and (4) negligent misrepresentation. Defendant removed based upon complete preemption under ERISA and moved for summary judgment based upon ERISA preemption. The Court ruled that the Policy was not an ERISA plan, but that Defendants had also removed based upon diversity. The Court noted that it would await cross motions for summary judgment on the state law claims. The parties filed those motions. Plaintiff asked for a judgment of $134,000 plus interest, etc., and Defendant requested that the Plaintiff take nothing. The Court ruled that Plaintiff was entitled to $11,000 (the difference between the maximum amount of partial coverage available without an EOI approval, minus the amount already paid) and a return of the excess premiums she paid. The Court has entered judgment. Plaintiff has now asked for attorney's fees.

## II.   LEGAL STANDARDS

Rule 54 permits an award of attorney's fees pursuant to statute, rule, or contract. *See* Fed.

---

[2] Plaintiff does not indicate whether the entire difference between partial and full coverage premiums for previous months were deducted in a lump sum or spread out over several months.

1  R. Civ. P. 54(d)(2)(B)(ii).  Nevada permits attorney's fees by statute, *inter alia*, when a
2  prevailing party recovers $20,000 or less. Nev. Rev. Stat. § 18.010(2)(a).

3  **III.   ANALYSIS**

4  Plaintiff asks for fees pursuant to section 18.010(2)(a), because the judgment in her favor
5  was for $11,921.13 plus prejudgment interest of 5.25% and post-judgment interest of 0.15%,
6  which amount totals no more than $20,000.  Plaintiff seeks fees of $30,500 for 100 hours of
7  attorney labor at $300 per hour.  Plaintiff has itemized the attorney labor in an exhibit.

8  Defendant asks the Court not to award fees in its discretion under the statute.  First,
9  Defendant argues that Plaintiff did not receive significant relief because she initially sought
10 $134,000.  But Plaintiff clearly prevailed in part, and the precise purpose of subsection (2)(a) of
11 the state statute is to ameliorate the costs of filing suit where the award won is to small to justify
12 the costs of filing suit.  Here, where the recovery is less than the attorney's fees, the rationale
13 behind awarding fees under subsection (2)(a) is at its strongest.

14 Second, Defendant argues that because Plaintiff rejected Defendant's $11,000 offer of
15 settlement made on September 27, 2011, that Plaintiff cannot recover fees under subsection
16 (2)(a). *See Cormier v. Manke*, 830 P.2d 1327, 1328 (Nev. 1992) ("[W]hen considering a motion
17 for attorney's fees pursuant to NRS 18.010(2)(a) in a case in which a non-statutory offer of
18 settlement has been rejected, the district court must consider the reasonableness of the rejection.
19 Factors which go to reasonableness include whether the offeree eventually recovered more than
20 the rejected offer and whether the offeree's rejection unreasonably delayed the litigation with no
21 hope of greater recovery."). The Court is satisfied that the rejection of the $11,000 offer was
22 reasonable under these standards. Plaintiff recovered more than $11,000, and. although the Court
23 ultimately rejected her position in large part, she had a legitimate hope of greater recovery when
24 she rejected the offer.
25

1  Third, Defendant argues that if the Court awards fees, it should award only 11% of the
2 fees requested, because Plaintiff received only 11% of the relief she sought. The Court rejects
3 this argument. The Court is aware of no fee shifting statute based upon such reasoning, and
4 certainly section 18.010 is not. Although degree of success is a familiar factor in determining
5 reasonable attorney's fees, no rigid proportionality calculation such as the one offered by
6 Defendant is used.

7  The Court grants the motion for fees in part, but the Court agrees with Defendant that 100
8 hours was excessive in this case. For example, counsel has charged 17.5 hours ($5250) for
9 preparing for and attending a 23-minute oral argument—an argument that counsel should have
10 been able to prepare for while waiting for the argument to begin on the stacked calendar or
11 perhaps for one or two hours before leaving the office, or a day or two before. Counsel had
12 already at that stage charged approximately 40 hours in labor in preparing the case, including
13 approximately 24 hours in researching and preparing an opposition to the summary judgment
14 motion to be argued. Also, there were apparently no depositions taken and no other significant
15 discovery in the case, apart from reviewing the joint administrative record. The case was
16 essentially decided as a mater of law. The Court also finds $300 somewhat excessive for the
17 relatively simple nature of the case. The Court will award fees for 50 hours at $200 per hour.

## CONCLUSION

19  IT IS HEREBY ORDERED that the Motion for Attorney's Fees (ECF No. 56) is
20 GRANTED IN PART. Attorney's fees are AWARDED in the amount of $10,000.

21  IT IS SO ORDERED.

22 Dated this 26th day of April, 2013.

_____
ROBERT C. JONES
United States District Judge